UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                 *    CRIMINAL ACTION

VERSUS                                   *    NO. 08-87

DORNELIUS BROWN                          *    SECTION "F"


                         ORDER AND REASONS

   Before the Court is the defendant's Motion to Suppress Identification Testimony.  For the reasons that follow, the motion is DENIED.

                            Background

   A man, whom the government claims was the accused, Dornelius Brown, entered the Capital One Bank on St. Charles Avenue in New Orleans on March 7, 2008 and stood in line for a bank teller.  The man approached the teller, Tonya Ross, and placed a demand note on the counter, which was recovered after the robbery.  The note read: "Please Don't make no move Just Put all the 100's 50's and 20's in this Bag and let me get out of here so I don't have to hurt nobody Thank you."  The teller complied with the demands of the note, placed a stack of one hundred dollar bills, a dye pack, and bait bills into a bag and gave it to the robber.  The man then left the bank.  The events in the bank were recorded on bank surveillance cameras.

                                1

The robber then fled on foot down a side street, followed by a plume of red colored mist from the activated dye pack. An exterior surveillance camera of a neighboring business recorded the events that occurred outside the bank. Investigators recovered a paper bag that contained a red dye stain and two red stained one hundred dollar bills. Investigators also recovered a New York Yankees baseball cap, which matches the teller's description of the cap worn by the robber and the cap seen in the bank's surveillance images. Federal Bureau of Investigation agents, after an investigation initiated by a "Crime Stopper's" tip, arrested Dornelius Brown as the bank robber.

The teller, Tonya Ross, was shown a photographic line-up on April 1, 2008; FBI agents first showed her surveillance images of her teller station during the robbery, including images of the robber, and then showed her a six-person photographic line-up, which included a picture of the defendant.[1] She immediately identified Brown as the robber.

The defendant contends that the identification testimony of the teller should be excluded because of the suggestiveness of the procedure used in the line-up. Brown argues that the teller was unable to give any substantive description of the assailant at the time of the incident. He urges, contrary to the evidence, that the

---

[1] There are no claims that the investigators suggested which photograph the teller should pick either by marking or commenting on the photographic lineup.

2

witness to the robbery "gave very limited descriptions of the perpetrator" and that the only consistent description was that the perpetrator was a young black man. The evidence does not support his position.

On a more serious note, Brown insists that because the teller was permitted to view surveillance photographs immediately before being shown a photo array, the result was an impermissibly suggestive identification procedure.[2] He claims the teller's identification was not based on her independent memory, but on comparisons of these images to the line-up photographs. The defendant claims his Fifth Amendment due process rights were violated. He points to the two part test that requires suppression of identification procedures that create a substantial likelihood that the identification is unreliable. He submits that the identification procedure was impermissibly suggestive and that, under the totality of the circumstances, the suggestiveness "irreparably taints [the teller]'s identification."

Finally, Brown adds that because the teller has no independent basis for an in-court identification other than her tainted pretrial identification, this Court should not permit her to make an identification at trial.

The government responds that the procedures employed in making

---

[2] Because of news reports, the teller briefly saw the surveillance pictures on two other occasions after her first FBI interview, but there is no evidence she was influenced or coached.

the identification were not impermissibly suggestive and did not give rise to a substantial likelihood of irreparable misidentification.  It underscores the teller had ample opportunity to view the robber and identify him: The robber was only wearing a baseball cap and no sunglasses or other item that would conceal his face; the robber leaned forward within two or three feet toward the teller during the robbery, providing her with a good close-up view; the surveillance photos show that the teller had a clear and unobstructed view of the robber's face.  Moreover, the government points out the teller provided a detailed description of the robber, contrary to the defense's assertion:

> [B]lack male, with a thin build, approximately 5'9"-5'10" in height, approximately 150 pounds, between 21-25 years of age, had a dark skin tone with at least one gold colored tooth on the upper left side of his mouth, and was wearing a New York Yankees hat and a black satin style jacket with some red trim or writing.

The government emphasizes that the teller was not shown an image that resembled the robber or a photographic array of various pictures of Brown, but, rather, actual surveillance photographs of the incident.  The teller relied on her independent refreshed recollection, less than a month later, when she quickly chose Brown's photograph from an array of six different people.  The record is clear.[3]

---

[3] Although the teller had briefly seen the incident photos, she did not identify the defendant in the photo lineup

4

The government submits also that under the totality of the circumstances the identification is reliable and admissible.

Law and Application

I.

Fifth Amendment due process commands that unreliable identifications based upon impermissibly suggestive photographic lineups be excluded from trial. United States v. Sanchez, 988 F.2d 1384, 1389 (5th Cir. 1993)(citing Moore v. Illinois, 434 U.S. 220, 227 (1977)). The Court must apply a two part test: "First, the court must determine whether the photographic display was impermissibly suggestive. If it was, the court must proceed to the second inquiry and determine whether the display posed a 'very substantial likelihood of irreparable misidentification.'" Sanchez, 988 F.2d at 1389 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). Both factors must be present to exclude identification evidence. United States v. Rogers, 126 F.3d 655, 658 (5th Cir. 1997).

While the first element tests the suggestiveness of the procedure, the second tests the reliability of the witness' identification. "The gravamen of the determination is fairness and reliability." Sanchez, 988 F.2d at 1389 (citing Manson v. Brathwaite, 432 U.S. 98, 113-14 (1977)). In analyzing the

---

until at least a month later. The FBI showed her the incident photos and the lineup. The record reveals no evidence of coaching or overreaching.

reliability of an identification, the Court must look at "the totality of the circumstances surrounding the witness' initial observation of the subject and the witness' subsequent identification of the subject." Sanchez, 988 F.2d at 1389 (citing Simmons, 390 U.S. at 382).  Courts look to five factors in making the reliability determination:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199 (1972).

II.

A. Suggestiveness of Identification Procedures

The defendant first insists that showing the teller photographs from the surveillance footage of the robbery just prior to her viewing a photographic lineup was impermissibly suggestive.[4] This Court disagrees.

The Fifth Circuit held in United States v. Ervin that showing a photograph of the actual perpetrator during the commission of the crime to eyewitnesses prior to making an in-court identification

---

[4] The defendant also references the suggestiveness of news media photographs, but does not specifically assert what, if any, pictures were shown in local news media, nor does the defendant claim that the teller had seen any pictures of the robber in newspapers or on television.  The Court is unimpressed with blatant speculation.

was "not suggestive at all." 436 F.2d 1331, 1333-34 (5th Cir. 1971). The court found the "photograph depicting a true detail of an active part of the [crime]" to be "the equivalent of showing such witnesses a contemporaneously made written statement describing facts, in order to refresh their recollection and make their testimony more accurate." Id. at 1333. The court emphasized "[t]he photograph did not suggest possibilities, it showed facts." Id. at 1334. Ervin is strikingly similar to the Brown identification process.

The Ninth Circuit agreed in United States v. Monks, in a case also similar to the one at hand. The court there held that the identification procedures were not impermissibly suggestive where witnesses were shown a surveillance photograph of the bank robber just before identifying the defendant in a photographic lineup. 774 F.2d 945, 956 (9th Cir. 1985). But cf. United States v. Evans, 484 F.2d 1178, 1185 (2d Cir. 1973) (noting that showing surveillance photographs and footage to witnesses prior to and during the trial "may have been unnecessarily suggestive," but nonetheless holding that under the totality of the circumstances, the witnesses' testimony was reliable).

Here, the teller was shown pictures from a surveillance camera that captured someone in the act of robbing the bank from a perspective similar to that of the teller herself. This Court finds that a photograph that captures the actual crime is not

7

impermissibly suggestive, but, rather, a valid . . . and reliable . . . form of refreshing a witness's recollection. The Court agrees that these photographs did "not suggest possibilities, [but instead] showed facts."[5]  Ervin, 436 F.2d at 1334.

### B. Reliability of Identification

Even if one were to assume the identification procedures were somehow impermissibly suggestive, the record does not establish a substantial likelihood of irreparable misidentification. See Simmons, 390 U.S. at 384. The Court finds that upon weighing the five factors of reliability announced by the Supreme Court, under the totality of the circumstances, the identification of Brown is sufficiently reliable. Biggers, 409 U.S. at 199; Brathwaite, 432 U.S. at 114.

The teller had a good view of the robber. The surveillance pictures provided by the prosecution reveal that she was a mere short distance from the robber during the crime; he was wearing only a baseball cap; nothing obstructing his face; there was excellent lighting inside the bank; it was daytime; and the teller had ample time to observe him.

When the teller was shown the photographic lineup, she immediately pointed to the photograph of the defendant. The

---

[5] The Court finds no merit in the defendant's exaggerated argument that this procedure is the same as bringing a single person to a witness for identification. The photographic lineup contained photographs of six different people from which the teller was able to identify the defendant.

defendant urges the Court to not give any weight to the degree of eyewitness certainty, asserting that as a matter of general theory it is a poor indicator of accuracy. See Roger B. Handberg, Expert Testimony on Eyewitness Identification: A New Pair of Glasses for the Jury, 32 AM. CRIM. L. REV. 1013, 1021 (1995) ("[T]here is no significant correlation between a witness's confidence and his or her accuracy in identification."). Perhaps so, in general academic terms, but neither side offers anything beyond scattershot theory.

Finally, the photographic lineup took place a mere three and a half weeks after the robbery. The Supreme Court has approved a time lapse of even two months and greater where other factors of reliability are present. Coleman v. Alabama, 399 U.S. 1, 3 (1970).

The ultimate determination from an analysis of these factors is whether there is a substantial likelihood of misidentification. Simmons, 390 U.S. at 384. This Court agrees that "[l]ittle possibility of misidentification arises from the use of photographs depicting the likeness not of some possible suspect in the police files, but of the person[] who actually committed the robbery." Monks, 774 F.2d at 957.

### III.

The defendant also argues that the teller's in-court testimony at trial should be excluded. Determining whether in-court testimony should be excluded is based upon whether the out-of-court identification procedures violate defendant's due process rights.

Amador v. Quarterman, 458 F.3d 397, 413 (5th Cir. 2006). Because this Court has determined that the out-of-court identification procedures did not violate the defendant's Fifth Amendment due process rights, the motion to suppress in-court trial testimony by the teller is also denied.

    Accordingly, defendant's Motion to Suppress is DENIED.

    New Orleans, Louisiana, October 23, 2008.

                                MARTIN L. C. FELDMAN
                            UNITED STATES DISTRICT JUDGE